UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

City of Duluth,

                Plaintiff,

vs.

Fond du Lac Band of Lake
Superior Chippewa,

                Defendant.           Civ. No. 09-2668 (ADM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Defendant Fond du Lac Band of Lake Superior Chippewa (the "Band") to Continue this case pending review by the National Indian Gaming Commission ("NIGC").[1]  See, Docket No. 75.  A Hearing on the

_____

[1]Because the Band's Motion to Continue potentially impacts upon the District Court's Order of April 21, 2010, which granted a partial Summary Judgment to the Plaintiff City of Duluth, we express our decision as a Report and Recommendation in

(continued...)

Motion was conducted on June 1, 2010, at which time, the City appeared by David P. Sullivan, and Robert C. Maki, Esqs., and the Band appeared by Sarah K. Van Norman, and Henry M. Buffalo, Jr., Esqs. For reasons expressed below, we recommend that the Band's Motion be denied.

## II. Factual and Procedural Background

The City of Duluth ("the City") commenced this action against the Band on September 29, 2009. The City alleges that the Band has breached its contractual obligations pursuant to a series of agreements that established a casino in downtown Duluth. See, Complaint, Docket No. 1. The City further seeks a Declaratory Judgment that the contracts between the parties are valid and enforceable, together with alleged damages for the Band's breach, and injunctive relief that enjoins the Band from any further breach of the contracts.[2] For its part, the Band alleges that it did not breach the 1994 Agreements, and that the 1994 Agreements are unenforceable

---

[1](...continued)
deference to the District Court.

[2]The City also sought accelerated damages, as a result of the Band's complete repudiation of the parties' contracts, but it is no longer pursuing that relief here, at least at this juncture.

because they are illegal under Federal law, unconscionable, lacking in consideration, and are the product of mutual mistake.  See, <u>Answer, Docket No. 3</u>.

By way of background, in 1986, the parties entered an Agreement which allowed the Band to operate a Casino in the downtown area of the City, in exchange for a payment to the City from the Casino's revenue.  That relationship lasted until 1989, when the Band sued the City alleging that the financial arrangement, that was secured by the 1986 agreement, violated that portion of the Indian Gaming Regulatory Act ("IGRA"), <u>Title 25 U.S.C. §2701, et. seq.</u>, which requires the Band to retain the "sole proprietary interest and responsibility for the conduct of any gaming activity." <u>Title 25 U.S.C. §2710(b)(2)(A)</u>.  On December 26, 1990, the District Court, the Honorable Paul A. Magnuson presiding, dismissed the Band's Complaint, without prejudice, and referred the dispute to the NIGC, which was created by the IGRA, in order to conduct a review, and provide the Court with a recommendation, and a Judgment was entered on that same date.

Thereafter, on September 24, 1993, the NIGC issued a determination that the operation of the Casino, pursuant to the 1986 Agreement, violated the IGRA. However, the NIGC deferred any enforcement action so as to allow the parties to engage in negotiations, which extended over the course of nine (9) months, and which

were conducted under the auspices of the Chairman of the NIGC. Those negotiations were intended to reach a mutually agreeable reconstruction of the operation and control of the Casino, in order to comply with the requisites of the IGRA. On June 16, 1994, the NIGC transmitted a letter to the Band, and to the City, in which it advised that it had reviewed the proposed settlement agreement, and "concluded that this agreement returns full ownership and control of the Fond du Luth Casino to the Band and is consistent with the requirements of the IGRA."

Accordingly, on June 20, 1994, the parties executed the final settlement agreements ("the 1994 Agreements"), which were approved by the United States Secretary of Interior, through the Secretary's Acting Area Director, and on that same date, the Chairman of the NIGC submitted a letter to the District Court, the Honorable Paul A. Magnuson presiding, in order to inform the Court of the proposed settlement. In that letter, the Chairman stated as follows:

> Pursuant to your December 26, 1990, Order, I am writing to report that the settlement agreement recently concluded between the Fond Du Lac Band and the City of DuLuth returns ownership and control of the Fond DuLuth Casino to the Band and is fully consistent with the IGRA. Accordingly, I recommend that this settlement agreement be approved.

Then, on June 22, 1994, the Band filed its second lawsuit against the City, in which the Band alleged, as it had in the 1989 Complaint, that the 1986 Agreement, between the Band and the City, violated the IGRA because, after that Agreement, the Band did not retain the "sole proprietary interest" in the Casino.

On that same date, the parties filed a Joint Memorandum in Support of Proposed Stipulation and Consent Order. In their Memorandum and Stipulation, the parties represented to the District Court that "they desire[d] the Court's approval in order to ensure binding implementation of the settlement agreement," and they mutually asked the Court to retain jurisdiction over the settlement. By Order dated July 29, 1994, the District Court approved the mutually proposed settlement, dismissed the Band's Complaint with prejudice, and "retain[ed] jurisdiction over this matter, including specifically the 1994 Agreements, for the purpose of ensuring the obligations of the parties to comply with all provisions of the 1994 Agreements."

The 1994 Agreements provided that, among other things, the Band would pay "rent" to the City equal to nineteen percent (19%) of the gross revenue from certain gaming activities, through March 30, 2011. In addition, the 1994 Agreements provided that "on or before January 1, 2010, the Band and the City shall meet and shall negotiate in good faith," the percentage of gross revenues to be paid by the Band

to the City, for the 25 year term commencing on April 1, 2011 (the "Extension Term"). With respect to renegotiation, the 1994 Agreements further provide as follows:

> If the parties have not reached agreement by June 30, 2010 the Band or the City may request the Chairman of the National Indian Gaming Commission to mediate at meetings to be held in Washington D.C. for purposes of attempting to bring the parties to agreement. If the National Indian Gaming Commission is no longer in existence or if the Chairman of the National Indian Gaming Commission refuses to mediate meetings in Washington, D.C. or if no agreement is reached by midnight October 1, 2010, the Band and the City shall submit the dispute to binding arbitration under the arbitration clause of Paragraph 10 of the Tribal-City Accord. The arbitrators shall review the history of the transaction, shall listen to the position of the parties and shall reach a fair and equitable resolution of the percentage of gross revenues to be paid to the City over the second 25 year term.

Following the Court's approval of the 1994 Agreements, the parties remained at peace for more than fifteen (15) years until, on January 28, 2009, the Chairwoman of the Band informed the City that the Band was deducting $561,047.59 from its quarterly payment to the City, due to revised accounting practices.[3] In response, counsel for the

---

[3]In particular, the revised accounting practices refer to a 2008 clarification in accounting principles regarding the proper treatment of promotional expenditures, which, if applied, would result in lower gross revenue for those years. The Band
(continued...)

City informed the Band that it objected to the Band's withholding of those funds, that the funds should be returned to the City, and that it might be appropriate to present the issue to the District Court.

On August 6, 2009, the Chairwoman wrote another letter, in which she advised that counsel's letter "prompted a review by the Reservation Business Committee [the "RBC"] of the 1986 and 1994 agreements * * * and the City's asserted interests in that operation," after which, the RBC concluded as follows:

1.      That the City has no assertable proprietary interest in the Fond-du-Luth Casino;

2.      That the City's consent to the existence of reservation land within the City and the operation of a casino on that land is not, and never has been, legally necessary, and that the agreements were erroneously premised upon those assumptions;

3.      That the City has received in excess of $80 million from the Band under the 1986 and 1994 agreements, in return for which the City has provided no consideration or compensable services beyond those municipal services which are legally obligatory; and

4.      That, consistent with the common law of the Fond du Lac Band, the overriding fiduciary duty of the RBC

_____

[3](...continued)
contends that, according to this clarification, promotional expenses must be treated as offsets against revenue, rather than as expenses (the "contra-revenue issue").

> to the commonwealth of the Band requires that the
> RBC cease all payments to the City, effective
> immediately.

On August 12, 2009, counsel for the City notified the Band that it was treating the

Band's cessation of payments as a default, and as a breach of the 1994 Agreements,

and on September 29, 2009, the City filed its Complaint in the instant action.

Subsequently, on December 10, 2009, the City filed a Motion for Summary

Judgment, on the following issues:

> Is the Band's action in repudiating its obligations for
> payment under the 1994 Agreement and this Court's Order
> and Judgment barred by the doctrines of res judicata and or
> judicial estoppel entitling the City to judgment as a matter
> of law for the relief requested in the Complaint and that the
> Band take nothing by way of its Counterclaim?

Plaintiff's Memorandum in Support of Motion for Summary Judgment, Docket No.
9, at p. 3 of 34.

In opposition to the City's Motion for Summary Judgment, the Band argued that res

judicata did not apply, and further, that the 1994 Agreements are unlawful, thereby

making Summary Judgment to enforce them inappropriate. In particular, the Band

argued that the 1994 Agreements granted the City a proprietary interest in the Casino,

and imposed an illegal tax on Casino revenues, in violation of the IGRA.

Before filing its response, however, the Band had filed a Motion to Continue the City's Motion for Summary Judgment pending the conduct of some discovery, pursuant to Rule 56(f), Federal Rules of Civil Procedure. See, <u>Docket No. 22</u>. In support of that Motion, the Band argued that it needed discovery as to whether the 1994 Agreements granted the City an unlawful proprietary interest in the Casino, or imposed an illegal tax on Casino revenues, in violation of the IGRA. See, <u>Docket No. 24</u>. The Band argued that those issues were mixed questions of law and fact, which would require the services of an expert.

On January 8, 2010, we denied the Band's Motion to Continue the City's Motion for Summary Judgment, because "the Band [had] failed to demonstrate that the discovery it request[ed] [was] essential to any proper response to the City's Motion for Summary Judgment." See, <u>Docket No. 42</u>, at p. 14 of 18. We noted that, while the City asserted that the Band was precluded by virtue of res judicata, and judicial estoppel, from relitigating the legality of the 1994 Agreements, the Band claimed that the 1994 Agreements, and the Consent Decree, were vitiated by mutual mistake, and their illegality under current interpretations of the IGRA. <u>Id.</u> at p. 15 of 18. In denying the Band's Motion, we further reasoned as follows:

> In fact, the Secretary of the Interior, the Chairman of the NIGC, the parties, and the District Court, all approved the settlement, and no one, not even the Band, has attempted to reopen the Consent Decree for over fifteen (15) years.

Id.

We concluded that the Band had failed to show that any of the proposed discovery would impact upon the validity of the Consent Decree, or the enforceability of the 1994 Agreements, because the Band had not competently established that the opinion letters it intended to rely upon could express a change in the controlling law. Id. at pp. 15-16 of 18.

On April 21, 2010, the District Court, the Honorable Ann D. Montgomery presiding, issued an Order granting in part, and denying in part, the City's Motion for Summary Judgment. See, Order on Plaintiff's Motion for Summary Judgment, Docket No. 73. As pertinent here, in its Order, the District Court found that the standards for the reopening of a consent decree had not been satisfied, because the Band had failed to demonstrate a cognizable change in the law. The Court concluded that, as to the NIGC's opinion letters that were relied upon by the Band, "however predictive of the NIGC's decision if it were to consider the arrangement regarding the Fond du Luth Casino anew, do not constitute changes in either statutory or decisional law." Id. at p. 15. Moreover, insofar as the Band had argued that the Court should

- 10 -

reach the validity of the 1994 Agreements, since those Agreements exposed the parties

to a possible enforcement action by the NIGC, the District Court advised as follows:

> It may be that the arrangement between the Band and the City violates the IGRA in the eyes of the NIGC. But until the NIGC initiates an enforcement action regarding the Fond du Luth Casino and proceeds with that action to a final decision on the substantive issue of proprietary interest, this Court's view would constitute an advisory opinion.

Id. at p. 17.

The District Court concluded that the relitigation of the validity of the 1994

Agreements was barred by the doctrine of res judicata, and therefore, it granted

Summary Judgment on that portion of the City's Motion.[4] As a consequence, the

District Court has ruled that the 1994 Agreements remain in full force, pursuant to the

Consent Decree. The District Court declined to grant Summary Judgment in favor of

---

[4]In particular, the District Court advised that the only method for seeking relief from the Consent Decree was to file a Motion under Rule 60(b), Federal Rules of Civil Procedure, or to institute an independent action for relief from Judgment, pursuant to Rule 60(d), Federal Rules of Civil Procedure. Although the District Court concluded that the Band had sought no such relief in this action, it held that the Band had failed to make a showing that would have justified relief under either of the applicable standards, in any event.

the City on the contra-revenue issue, however, since its resolution involved genuine issues of material fact.  Id. at pp. 18-19.[5]

Then, on May 17, 2010, the Band filed a Motion to Continue this case pending review by the NIGC, which is now before the Court.  See, Docket No. 75.  In this Motion, the Band asks that all deadlines be continued until after the parties have completed mediation, before the NIGC.  The Band argues that continuing the case serves the interests of efficiency, and that a continuance is warranted in view of the possibility of an NIGC enforcement action, since the District Court has concluded that it may not reach the legality of the 1994 Agreements.

In opposition, the City argues that we should deny the Band's request for a continuance, on the ground that the issues to be decided in mediation before the NIGC, and the issues that remain before the Court, are separate and distinct.  Second, the City argues that the Band's second argument, as to the risk of an enforcement action, is without merit, since its reliance on advisory letters, that have been issued by the NIGC, is unavailing.  Lastly, the City argues that it will be prejudiced if the Band is granted a continuance.

---

[5]The City has advised that it will likely move for the entry of a final Judgment, pursuant to Rule 54(b), Federal Rules of Civil Procedure, in the near future.

On the same date as it filed the present Motion to Continue, the Band also submitted a letter to the Chairman of the NIGC. See, <u>Docket No. 78-1</u>. In that letter, the Band briefly recounted the parties' relationship under the 1994 Agreements. In particular, in that letter, the Band advises the Chairman, as follows:

> [The 1994 Agreements] included a "sublease," necessitated by the existing agreements between the parties (although the City has no ownership whatsoever of the Casino building and since at least 1994 has provided no financial support to the Casino), under which the City was assigned 19% percent of gross revenues from slot machines for the initial term of the sublease.
>
> Under the 1994 Agreements, from 1994 to 2008, the Band paid the City **$72,834,184.05**. In exchange, the Band has received nothing more than the normal municipal services that any downtown Duluth business receives, and for which other businesses pay a tiny fraction of that amount in property tax.

<u>Id.</u> at pp. 1-2. [emphasis in original].

The letter goes on to advise the Chairman that, in 2009, the Band's RBC found that the 1994 Agreements were in violation of the IGRA's sole proprietary interest requirement, in view of the NIGC's opinion letters over the past decade, which placed the parties "in danger of an NIGC enforcement action." The Band further advised the Chairman that it remained convinced that the 1994 Agreements violate the IGRA, but

that, in light of the District Court's Order, "the Band now seeks NIGC review pursuant to the terms of the 1994 Agreements themselves." Id. at p. 2.

On May 21, 2010, the City also submitted a letter to the Chairman of the NIGC, in response to the Band's letter. See, Affidavit of Shawn B. Reed, ("Reed Aff."), Docket No. 84, at Exhibit 1. In that letter, the City advised that it would fully participate in any NIGC mediation that is scheduled. The City further advised that, at least in its view, the mediation process would only apply to the 25- year Extension Term, and that the parties' issues, as to the Initial Term, had been partially resolved by the District Court's Order, and were not subject to mediation.

Following the Hearing on the Band's Motion, the NIGC notified the parties that it had assigned John R. Hay ("Hay"), who is a Senior Attorney with the NIGC, to mediate the dispute between the parties. See, Docket No. 90-1. In pertinent part, the letter summarized the dispute as follows:

> This dispute involves a 1994 agreement ("the sublease") between the Tribe and the City in which the Tribe agreed to pay the City a percentage of gross gaming revenues from slot machines for the initial term of the sublease. The terms of this agreement concerning payments to the City are set to expire on March 31, 2011. Under the sublease, the parties are required to renegotiate the gross revenue percentage for a term of 25 years beginning after the expiration of the current sublease. If the parties are unable

> to reach agreement by June 30, 2010, then they may request that the NIGC mediate the dispute. The NIGC has until midnight of October 1, 2010, to assist the parties in reaching agreement.

Id.

Hay advised the parties that he had scheduled a conference call for July 12, 2010, in order to set a schedule for the mediation. Id.

With this factual and procedural backdrop, we proceed to a consideration of the substance of the Band's Motion.

## III. Discussion

The Local Rules of the District of Minnesota provide that "[a] motion for the continuance of a case will be granted only for good cause shown." D.Minn.L.R. 6.1. Similarly, with respect to the extension of the discovery schedule, Local Rule 16.3 provides that, "[o]nce the pretrial discovery schedule is adopted, it shall not be extended or modified except * * * for good cause shown." D. Minn.L.R. 16.3(a). The Band argues that there is good cause for a continuance, based upon the interests of efficiency, and based upon the threat of an enforcement action by the NIGC. We turn first to the Band's argument that the interests of efficiency warrant a continuance of this litigation.

The Band argues that the mediation represents the parties' "best opportunity to investigate a global settlement," and that "[t]he parties should be empowered [to] focus their resources on that mediation * * * rather than splitting resources" between the mediation and this litigation. <u>Defendant's Memorandum in Support of Motion to Continue, Docket No. 77</u>, at p. 8 of 11. For its part, the City argues that a continuance is not warranted, because the 1994 Agreements limit mediation with the NIGC solely to the issue of negotiating the payments due to the City for the Extension Term, because the claims currently before the Court do not overlap with the negotiation of the future payments due to the City, and because the asserted threat of an enforcement action does not warrant a continuance of this case, since the District Court has concluded that the 1994 Agreements are still enforceable.

Only two (2) issues are remaining to be resolved by the District Court -- namely, the amount of rent and arrears due to the City for the Initial Term, which ends on March 31, 2011, and whether the contra-revenue may be deducted from the rent due to the City. The only issue that is to be submitted to the NIGC, at least pursuant to the express terms of the 1994 Agreements, is the negotiation of the rental rate for the Extension Term. To be sure, the claims "overlap" in the sense that they arise from the same agreements, and from the same relationship which extends between these

parties, but we find that Band has not established that there is any benefit in delaying this matter, while the parties engage in mediation before the NIGC.

Of course, we are mindful that the Band believes that the 1994 Agreements are unlawful, and therefore, that it would, by all appearances, prefer that the NIGC address the legality of the underlying contracts in connection with both the Initial Term and the Extension Term. However, the District Court has already addressed that issue in this litigation. Moreover, based upon our review of the Record, the 1994 Agreements contemplate mediation before the NIGC, with respect to the negotiation of the future payments that are to be made by the Band, pursuant to the Extension Term commencing on April 1, 2011, but we aware of no provision in the Agreements, which would confer a right to pursue mediation before the NIGC as to all disputes that arise under the 1994 Agreements.

The City chose to pursue a remedy for the Band's asserted breach of the 1994 Agreements for past rent and arrears in this Court, and nothing in the NIGC's recent letter suggests that the NIGC intends to address the legality of the underlying 1994 Agreements. As a consequence, the Band has not demonstrated that any pragmatic considerations of efficiency warrant a continuance of this matter. While the Band may

not wish to litigate in two (2) different forums, the issues that are to be decided here, and in the mediation, are distinctly different.[6]

Next, the Band argues that the parties now find themselves in a delicate position, in light of the District Court's Order, which held that the 1994 Agreements are enforceable by virtue of the 1994 Consent Decree, and the NIGC's opinion letters, which suggest that the 1994 Agreements violate the IGRA. See, Defendant's Memorandum in Support, supra at p. 8 of 11. According to the Band, enforcement actions often have grave consequences for the parties involved, and the NIGC is not bound by the Orders of this Court. As such, the Band contends that the only way to insulate the arrangement between the City and the Band is to affirmatively seek NIGC review, and accordingly, that this case should be continued while the parties seek that review. Id. at pp. 8-9 of 11.

_____

[6]Indeed, we find the Band's assertion, that the parties might be able to reach a "global settlement" through mediation, especially anomalous, given the Band's unwavering belief in the merit of its position that the 1994 Agreements are invalid, and the City's equally insistent assertion that the issue cannot be addressed other than in the context of this litigation. By the Band's own admission, it has raised that argument several times in this litigation, to no avail, and it will continue to raise that argument. We see little prospect of a global settlement, insofar as the past rental payments are involved, and as a consequence, we find that the Band's argument, in this respect, is without merit.

In response, the City contends that the Band is essentially arguing that the District Court's Order on its Motion for Summary Judgment is not binding, due to the Court's asserted lack of jurisdiction -- an argument that the City contends the Band has waived by virtue of it failure to raise the argument earlier. See, Plaintiff's Memorandum in Opposition, Docket No. 86, at pp. 8-9 of 13. In addition, the City argues that, contrary to the Band's argument, it will be prejudiced by a continuance of this matter, since a continuance will delay its receipt of payments for the rental arrears that are owed by the Band. Id. at p. 11 of 13.

In its Order on the City's Motion for Summary Judgment, the District Court concluded that the Band had failed to establish a cognizable change in the law, and further explained as follows:

> The parties' stipulated to the validity of the 1994 Agreements and their compliance with IGRA. Further, the parties sought to give their stipulation the imprimatur of judicial approval. To seek relief from the consent decree, which is a final judgment, the Band must make the necessary showing required under [Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992)]. In the absence of such a showing, principles of res judicata preclude reconsidering issues resolved in the consent decree, namely, the validity of the 1994 Agreements.

Order on Plaintiff's Motion for Summary Judgment, supra at p. 16 of 20.

The Band emphasizes, however, that in ruling as it did, the District Court further advised as follows:

> It may be that the arrangement between the Band and the City violates the IGRA in the eyes of the NIGC. But until the NIGC initiates an enforcement action regarding the Fond du Luth Casino and proceeds with that action to a final decision on the substantive issue of proprietary interest, this Court's view would constitute an advisory opinion.

Id. at p. 17 of 20.

Accordingly, the Band argues that the District Court "recognized that the NIGC might take action that would ultimately permit the Court to reopen the 1994 Consent Decree and revisit the terms of the 1994 Agreements." See, Defendant's Memorandum in Support, supra at pp. 5-6 of 11.

Notwithstanding the noted language in the District Court's Order, we find no basis for continuing this matter, based upon the unvoiced threat of an NIGC enforcement action. First, at the present time, the NIGC has expressed no intention of revisiting the legality of the 1994 Agreements. Nothing in the NIGC's recent letter to the parties, regarding their upcoming mediation, so much as intimates that it will be addressing any issues beyond the negotiation of the Extension Term rental rate. Moreover, based upon the Record, there is no realistic suggestion that the NIGC is

likely to institute an enforcement action, and as such, the mere threat of such an action is an insufficient basis for continuing this case, or for delaying the City's efforts to pursue relief here.

Most importantly, we find the Band's contention, that we should continue this action based merely upon the potentiality of a **threat** of an enforcement action, to be very remote, if not entirely unlikely. The NIGC participated in the negotiation of the 1994 Agreements, and the parties represented, along with the NIGC Chairman, that the 1994 Agreements complied with the provisions of the IGRA. All parties involved were apparently solicitous of having the 1994 Agreements carry the weight of a Judgment, and as such, requested that their agreements be adopted by the Court in a consent decree. We seriously doubt that the NIGC would collaterally attack the very Judgment, which it elicited from the District, and to which the parties agreed while being represented by legal counsel, particularly when the District Court has ruled, as a matter of law, that a direct attack on the Court's Judgment is precluded by the doctrine of res judicata.

As we have detailed, the District Court concluded that the Band has not demonstrated circumstances which warrant a reopening of the Consent Decree. Now that it has lost its argument before the District Court, the Band would have us continue

this matter, in order that it might importune the NIGC to conclude that the 1994 Agreements **are illegal** under current interpretations of the IGRA, and thereby, and somehow, avoid the effect of the District Court's Order on Summary Judgment. Absent some showing that the NIGC has the authority to reverse the Judgment of the District Court, we find no good cause for continuing this matter, while the Band seeks out some more favorable result elsewhere. The Band is certainly free to seek the NIGC's guidance, but we find no reason to delay the orderly progression of this proceeding on that basis, and as a consequence, we recommend that the Band's Motion to Continue this case, pending a mediation before the NIGC, be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Band's Motion to Continue this case pending a review by the NIGC [Docket No. 75] be denied.

Dated:  July 12, 2010                                    s/Raymond L. Erickson
                                                         Raymond L. Erickson
                                                         CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 26, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **July 26, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.