UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

___

City of Duluth,            Civ. No. 09-2668 (ADM/LIB)

    Plaintiff,

v.                                         **REPORT AND**
                                       **RECOMMENDATION**
Fond du Lac Band of Lake Superior
Chippewa,

    Defendant.

___

This matter is before the Court on Defendant Fond du Lac Band of Lake Superior Chippewa's (the Band's) renewed motion to stay. (Dkt. 126). The motion has come before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636. A hearing was conducted on December 7, 2010.

For the reasons discussed below, it is recommended that the motion be denied.[1]

**I.     BACKGROUND**

The background of this litigation and the history of the parties' relationship has already been described in detail by the Court on numerous occasions. Accordingly, the Court relies on these previous descriptions (see Dkts. 42, 73, 92 and 105), and therefore, the Court will only briefly summarize the facts and procedural history relevant to the issue now under consideration.

---

[1] As this ruling could potentially impact the District Court's Summary Judgment Order and its management of the Trial in this case, the Court has fashioned its ruling as a Report and Recommendation.

In this litigation, the Band generally maintains that the agreements entered into in 1994 between the Band and Plaintiff City of Duluth (the "City"), which underlie the Consent Decree adopted by the Court that same year, are now illegal under present interpretations, which were purportedly modified since 1994, of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. 2701 et seq. On April 21, 2010, the District Court granted partial summary judgment in favor of the City, concluding that the Consent Decree (and consequently the validity of the 1994 Agreements between the Band and the City therein) cannot not be reached in the present proceedings. As a consequence, the manner in which the parties calculate the Band's quarterly payments to the City, the question of contrarevenue, and the amount of the City's damages, are the only issues for purposes of this present lawsuit.

On May 17, 2010, shortly after the District Court's Summary Judgment Order, the Band filed its first motion to stay this present case pending possible action by the National Indian Gaming Commission ("NIGC"). (Dkt. 75). When the Court considered the Band's first motion to stay, the parties were also before the NIGC to negotiate the quarterly payments that are to be made by the Band for the 25-year Extension Term of the 1994 Agreements, which begins on April 1, 2011. The 1994 Agreements stated that the parties could request that the NIGC mediate the negotiations for the Extension Term payments; if such mediation is not undertaken or is not successful, the parties are to submit the dispute to binding arbitration. In its first motion to stay, the Band had requested that the case be put on hold pending the outcome of the mediation, and had also generally argued that the nonspecific threat of an enforcement action by the NIGC warranted a stay. On July 12, 2010, Chief Magistrate Judge Raymond L. Erickson recommended that the motion be denied because the prospect of an enforcement action by the NIGC was speculative, and because the issues to be resolved in the requested NIGC mediation were entirely

distinct from the issues remaining in the present litigation. (Dkt. 92). On August 13, 2010, the NIGC informed the parties that it was declining to mediate the parties' dispute regarding the Extension Term. (Dkt. 100-1). Over the Band's objection, the District Court, the Honorable Ann D. Montgomery presiding, adopted Chief Magistrate Judge Erickson's Report and Recommendation on September 24, 2010, thereby denying the Band's first motion to stay the present case. (Dkt. 105).

On August 16, 2010, the Band separately requested that the NIGC review the legality of the 1994 Agreements entered into between the Band and the City. The Band reiterated that request on September 16, 2010. On October 20, 2010, the Chairwoman of the NIGC informed the parties that based on the Band's correspondence, she had "directed the Enforcement Division of the Office of General Counsel to review this matter." (Dkt. 112). The parties were directed to "provide briefing on whether the [1994] agreements as executed and implemented are consistent with IGRA," by November 19, 2010. (Id.) The Band argues that because the NIGC has now initiated a review, the Court should defer any further proceedings in this litigation until that review (and any administrative process that might possibly result therefrom) is complete.

The NIGC has apparently not yet completed its review, it has not issued any written report, nor has it initiated any administrative action, and the Band does not know when the NIGC's review will be complete, nor can it reasonably predict what the ultimate outcome of that review might be.

## II. DISCUSSION

In its briefing on the motion, the Band's principal argument is that the doctrine of "primary jurisdiction" dictates a stay of the present litigation pending the outcome of the NIGC's

review. The Band argues that the NIGC has been entrusted with and has primary expertise in the regulation of Indian gaming, and therefore, this Court should defer to the agency before rendering a decision in the present case.

The doctrine of primary jurisdiction is "a common law doctrine that allows a court to refer matters to an administrative agency to give the agency an opportunity to address issues within its expertise." Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc., 192 F.3d 778, 785 (8th Cir. 1999), cert. denied, 529 U.S. 1066 (2000), citing Access Telecommunications v. Southwestern Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998), cert. denied, 525 U.S. 962 (1998). In other words, "it is a common law doctrine used to coordinate administrative and judicial decisionmaking." Red Lake Band of Chippewa Indians v. Barlow, 846 F.2d 474, 476 (8th Cir. 1988), citing Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 580 (1st Cir. 1979), cert. denied, 444 U.S. 866 (1979); United States v. Rice, 605 F.3d 473, 475 (8th Cir. 2010)("The doctrine 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'"), quoting United States v. W. Pac. R.R. Co., 352 U.S. 59, 63 (1956). When a court otherwise having jurisdiction determines that the issue to be resolved lies with an agency, it may stay or dismiss the action pending the agency's resolution of the issue. Jackson v. Swift Eckrich, Inc., 53 F.3d 1452, 1455-56 (8th Cir. 1995).

"There exists no fixed formula for determining whether to apply the doctrine of primary jurisdiction", but "in each case we consider whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created." Access Telecommunications v. Southwestern Bell Telephone Co., 137 F.3d at 608 [citations omitted]. "When a court and an agency have concurrent jurisdiction to decide a question, the most

common reason for a court to hold that the agency has primary jurisdiction is that the judges, who usually deem themselves to be relatively the generalists, should not act on a question until the administrators, who may be relatively the specialists, have acted on it." Red Lake Band of Chippewa Indians, 846 F.2d at 476 [citation and quotations omitted]. "Among the reasons and purposes served are the promotion of consistency and uniformity within the areas of regulation and the use of agency expertise 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion.'" Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005), quoting Access Telecommunications, 127 F.3d at 608. However, the doctrine should be "invoked sparingly, as it often results in added expense and delay." Red Lake Band of Chippewa Indians, 846 F.2d at 476 [citation and quotations omitted].

The Court does not dispute that the NIGC has specialized knowledge or that the NIGC is well-suited to address issues regarding the regulation of Indian gaming or compliance with the IGRA. Were the Court reviewing the parties' 1994 Agreements for compliance with the IGRA **in the first instance**, it would certainly be desirable, advisable, and appropriate to defer a ruling on this matter until the NIGC had a chance to review the agreements. However, the 1994 Agreements are not now before the Court for the first time. Indeed, when the validity of the parties' gaming arrangement first came before the District Court in the late 1980's, the dispute was initially referred to the NIGC. In 1989, the Band had sued the City alleging that its arrangement with the City violated the IGRA. The District Court dismissed the Band's lawsuit at that time without prejudice and did refer the dispute to the newly-created NIGC. The NIGC eventually concluded that the Band's arrangement with the City violated the IGRA, and the new 1994 Agreements and the resulting Consent Decree thereon that is at issue in this present

litigation, were the result of negotiations undertaken by the parties' with the NIGC's involvement.

Thus, given the procedural posture of this case, the Band's reliance on the doctrine of primary jurisdiction is not persuasive. In this instance, whether the Band and the City's arrangement embodied in their 1994 Agreements complies with the IGRA – an issue that might once have been amenable to the application of the primary jurisdiction doctrine – has already been reviewed and decided in connection with the previous litigation which ended with the 1994 Agreements and entry of a Consent Decree thereon. The District Court already concluded in its prior Order that because the present circumstances did not justify reopening the Consent Decree, the Court cannot now reach the validity of the parties' 1994 Agreements; including their compliance with the IGRA.

In an effort to revisit the issue settled by entry of the Consent Decree in the prior litigation, the Band is essentially arguing that the NIGC might take some as yet unidentified action at some unidentified time that could potentially have some impact on this litigation, or in other words, the Band argues generally that this action should be stayed because the NIGC might take some action that may in some unidentified way render this litigation moot. The Band's motion to stay does not hinge on whether the courts or the NIGC are best-suited to address matters of Indian gaming because the validity of the 1994 Agreements has already been judicially decided as embodied by the 1994 Consent Decree—regardless of whether the Band agrees with that conclusion under current, purportedly modified interpretations of the applicable law. The only issues that remain to be resolved in this present litigation **do not** implicate a matter that is appropriately deferred to the NIGC, but rather are matters that are appropriately addressed by the Courts: enforcement of the parties' obligations under the 1994 Consent Decree.

The Court finds the doctrine of primary jurisdiction inapposite under the circumstances and procedural posture of the present lawsuit.

Nevertheless, this does not end the inquiry because a district court still has wide discretion to stay a case where the circumstances warrant. See, Lunde v. Helms, 898 F.2d 1343, 1345 (8th Cir. 1990) (power to stay is incidental to court's inherent power to control its docket), cert. denied, 498 U.S. 897 (1990); Terra Industries, Inc. v. Commonwealth Insurance Co. of America, 981 F.Supp. 581, 606 (N.D. Iowa 1997) (court has inherent power to stay litigation pending the outcome of other proceedings in order to control its docket, to conserve judicial resources, and to provide for a just determination of the cases pending before it).

In this case, while the results of the NIGC's review could be separately useful to the parties as they negotiate the 25 year Extension Term of their 1994 Agreements, the Band has not established that a stay would be a warranted exercise of the Court's inherent power to control its docket and conserve judicial resources relative to the resolution of the issues in the present case. Although the Chairwoman of the NIGC has now referred the parties' 1994 Agreements for an internal review, the Court finds that in fact very little has materially changed relative to the present case since the Court's prior ruling on the Band's first motion to stay. The Band readily admits that even now it still does not know what action, if any, the NIGC will take, or how long it will take the NIGC to even complete its internal review. There is a binding judgment (embodied in the 1994 Consent Decree) for which enforcement is now being sought in this case, and given the District Court's Summary Judgment Order, the only issues to be resolved relate to the amount to be paid by the Band. Even if the NIGC were at some point ultimately to take some action that might possibly seem to implicate the validity of the underlying 1994 Agreements, the Band would still have to seek relief from the 1994 Consent Decree pursuant to

Federal Rule of Civil Procedure 60, and given the present vacuum of any sort of reliable prediction as to what the result of the NIGC review might even possibly be, there is no way of knowing if a Court would even grant such relief.[2] As such, any assertion that the NIGC's review might affect this litigation remains entirely speculative.

Lastly, even if the above hurdles of uncertainty were to be overcome, the Court believes that any action undertaken by the NIGC as a result of its pending internal review of the parties' 1994 Agreements could not affect the present litigation seeking to enforce the existing 1994 Consent Decree and the parties' past obligations thereunder. Any NIGC review results, which purport to have the effect of affirmatively relieving the parties of complying with their obligations under a past judgment of the District Court, would violate the separation of powers doctrine. Fundamentally, the essential implication of the Band's general assertions in support of the present motion to stay boils down to whether the NIGC can take any action that would have the effect of an executive agency vacating a judgment of the District Court by relieving the parties of their obligation to comply with that judgment. See, Chicago & Southern Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)("Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government").

"The framers of the Constitution created co-equal branches of government with distinct responsibilities and authorities." In re Young, 141 F.3d 854, 859 (8th Cir. 1998), cert. denied,

---

[2] And since there is no way to know when the NIGC might even possibly complete its review, there is no way to know when a request for relief under Federal Rule of Civil Procedure 60 could even be made. As such, the Band's motion is essentially one asking for an indefinite stay of the present action without any indication at this time whatsoever that any issue in the present litigation would be affected by the speculative results of the NIGC's review.

525 U.S. 811 (1998). The Supreme Court has explained the judicial power, in the context of the separation of powers doctrine, as follows:

> "Article III establishes a judicial department with the province and duty to say what the law is in particular cases and controversies. The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to **decide** them, subject to review only by superior courts in the Article III hierarchy—with an understanding, in short, that a judgment conclusively resolves the case because a judicial Power is one to render dispositive judgments."

Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19 (1995) [citations and quotations omitted].

In Plaut, the Supreme Court held that an amendment to the Securities Exchange Act, which operated to reinstate certain fraud claims that had been previously dismissed as time-barred under a prior version of the Act, violated the separation of powers doctrine. The Supreme Court stated that "[b]y retroactively commanding the federal courts to reopen final judgments, Congress has violated" the fundamental doctrine of separation of powers. Id. at 219. The Supreme Court explained that "[h]aving achieved finality . . . a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable **to that very case** was something other than what the courts said it was." Id. at 227. The Supreme Court further opined that the separation of powers doctrine "is violated when an individual final judgment is legislatively rescinded for even the **very best** of reasons, such as the legislature's genuine conviction . . . that the judgment was wrong." Id. at. 228 [emphasis in original]. In Plaut, the issue was not "the validity or even the source of the legal rule that produced the Article III judgments, but rather the immunity from legislative abrogation of those judgments themselves." Id. at 230.

In general, where a consent decree is approved by a court, that consent decree constitutes a final judgment of the court.  See, Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc., 138 F.3d 351, 356-57 (8th Cir. 1998); Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 391 (1992) ("a consent decree is a final judgment that may be reopened only to the extent that equity requires").  The Court finds that Plaut compels the conclusion that, contrary to the general assertions of the Band, the NIGC cannot unilaterally abrogate the 1994 Consent Decree at issue in the present enforcement litigation; the Consent Decree is itself a final judgment of the District Court.  The Court recognizes that the present case potentially involves an executive agency, the NIGC, rather than the legislative branch as was the case in Plaut.  However, the Court sees no basis for distinguishing the executive branch from the legislative branch in terms of their ability to reopen final judgments of Article III courts.  That is, there is no basis for concluding that an executive agency could avoid the restrictions of the separation of powers doctrine and take action affecting a court's final judgment in a way that the Supreme Court has found that the legislative branch cannot.  Simply put, an executive agency cannot take action that would effectively vacate a court's final judgment without offending the principles of the separation of powers.

By contending that the NIGC could possibly institute some action that could possibly operate to affirmatively obviate the parties' obligation to comply with the 1994 final judgment of the District Court, the Band is essentially arguing that the NIGC could undertake an action as a result of its pending review that would have the effect of unilaterally requiring the Courts to reopen and vacate the 1994 Consent Decree.  If the NIGC were to now retroactively declare invalid the 1994 Agreements, which underlie the 1994 Consent Decree presently at issue, and if as the Band maintains, this would require the District Court to reopen its own final judgment,

such NIGC action would violate the structural boundaries of the Constitution in a way that was declared invalid in Plaut.

At the December 7, 2010 hearing, the Band argued that in its summary judgment Order, the District Court indicated that if the NIGC took action that would change the matter. In the undersigned's view, the District Court did not make such an affirmative statement. Rather, the District Court was simply indicating that there was nothing before it at that time that would warrant even considering the possibility of Rule 60 relief, and therefore, that the validity of the underlying agreements could not be reached. The District Court did **not** conclude as a matter of law that the NIGC **could** effectively take enforcement action that would have the effect of requiring the District Court to vacate its previously entered final judgment as that question was not then specifically before the District Court.

At this time, the undersigned is unpersuaded that the NIGC could take any action having the effect of unilaterally relieving the parties of their past obligations under the 1994 Consent Decree, such that any stay of these present enforcement proceedings now would be justified. Further, as to whether any future results of the pending review by the NIGC might be the basis for the District Court to ever consider exercising its own discretionary power to set aside a final judgment pursuant to Rule 60(b),³ a stay of the present proceedings remains premature because, as noted above, the current record is lacking in anything but only the rawest of speculation as to when the NIGC might conclude its internal review, what the results of that review might be, and what, if any, further administrative or legal action the NIGC might possibly take based upon the results of its review.

---

³ See gen., Gavin v. Branstad, 122 F.3d 1081, 1088 (8th Cir. 1997), cert. denied, 524 U.S. 955 (1998).

In sum, the Court concludes that a stay of the present proceedings at this time remains unwarranted because the prospect that some non-specified, indefinite NIGC action might possibly impact this litigation in some undefined way continues to be entirely speculative. Moreover, given the circumstances of this case, the Court does not believe that any NIGC action can have the unilateral effect of requiring the vacation of a final judgment of the District Court. Further, the fact that a District Court has discretionary, inherent authority under Rule 60 to possibly alter the prospective enforcement of a Consent Decree at some unknown future date does not establish that the present proceedings should be stayed at this time, since the issues now before the Court primarily relate to enforcing the 1994 Consent Decree and resolving the parties' past obligations thereunder. As a consequence, no matter how much it may wish to or how hard it looks, the Court can find no substantive reason to delay the completion of these present proceedings based only on the speculative possibility that some unspecified thing the NIGC might do—whatever and whenever that might be—has the potential to somehow in an as yet undefined way implicate the present proceedings. There are simply too many vague contingencies to warrant a stay of this litigation as it is nearing its conclusion.

## III. RECOMMENDATION

Based on the foregoing and all of the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

The Band's renewed motion to stay [Docket No. 126] be **DENIED.**

DATED: January 5, 2011

s/ *[signature]*
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 19, 2011** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.