UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CITY OF DULUTH,                                             Civ. No. 09-2668 (SRN/LIB)

             Plaintiff,

v.
                                                           **REPORT AND**
                                                           **RECOMMENDATION**
FOND DU LAC BAND OF
LAKE SUPERIOR CHIPPEWA,

             Defendant.

---

    This matter is before the Court upon the Plaintiff City of Duluth's (the City's) Motion to Compel Arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  The Motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, it is recommended that the City's Motion to Compel Arbitration be granted.

## I.     BACKGROUND

    The background of this litigation and the history of the parties' relationship has already been described in detail by the Court on numerous occasions.  Accordingly, the Court relies on these previous descriptions (see Dkts. 42, 73, 92 and 105), and will only briefly summarize the facts and procedural history as it is directly relevant to the issue now under consideration.

    The 1994 Agreements provided that the Fond du Lac Band of Lake Superior Chippewa (the Band) would pay the City 19 percent of the gross revenues from video games of chance during the Initial Term of the Sublease (i.e. September 30, 1993 through March 31, 2011).  The Agreements further  required the parties to negotiate the percentage of the gross revenues from

video games of chance that the Band would submit as payments to the City[1] during the Extension

Term (April 1, 2011 through March 31, 2036):

> Renegotiation of City Gross Percentage in 2010.  As the City['s]
> Percentage of Gross Revenues from Video Games of Chance has
> not been established for the period commencing April 1, 2011, on
> or before January 1, 2010 the Band and the City shall meet and
> shall negotiate in good faith concerning the percentage of gross
> revenues (total revenues minus payouts to players) the City shall
> receive for the 25 year term commencing April 1, 2011.  If the
> parties have not reached agreement by June 30, 2010 the Band or
> the City may request the Chairman of the National Indian Gaming
> Commission to mediate at meetings to be held in Washington,
> D.C. for purposes of attempting to bring the parties to agreement.
> If the National Indian Gaming Commission is no longer in
> existence or if the Chairman of the National Indian Gaming
> Commission refuses to mediate meetings in Washington D.C. or if
> no agreement is reached by October 1, 2010, the Band and the City
> **shall submit the dispute to binding arbitration under the
> arbitration claus**e of Paragraph 10 of the Tribal-City Accord.
> The arbitrators shall review the history of the transaction, shall
> listen to the position of the parties and shall reach a fair and
> equitable resolution of the percentage of gross revenues to be paid
> to the City over the second 25 year term.

(Section 4.2.2.5 of the Sublease and Assignment of Gaming Rights, Dkt. 12-2)[emphasis

supplied].

Section 10 of the Tribal-City Accord governs arbitration under the 1994 Agreements:

> Binding Arbitration Provision. Whenever arbitration is specifically
> called for in this Accord or the Sublease, unless the Band and the

---

[1]      For simplification, the Court will refer to the Band's payments to the City, as determined by a fixed percentage of gross revenues from video games of chance, as the "rental rate."  The Band asserts that the use of the term "rent" to refer to the amount of the Band's payments is inaccurate in light of the fact that the Band owns the land on which the casino is located.  In this Report and Recommendation, the Court has used the term only as a shorthand for referring to the manner in which the payments that the Band is to pay to the City are determined under the terms of the 1994 Agreements.  The Court need not decide whether this terminology constitutes an accurate reflection of the parties' arrangement.

> City agree to a single arbitrator, each party shall, within 20 days of any written demand for arbitration select one arbitrator and the two arbitrators shall within twenty (20) days select a third arbitrator. The three arbitrators, unless an earlier day is stipulated to by the parties, shall hold a hearing within sixty (60) days of the selection of the third arbitrator and the hearing shall occur at a time, place and location set by majority of the arbitrators. The decision of a majority of the arbitrators shall be final and non-appealable with each party paying its own costs of arbitration.

(Tribal-City Accord, Section 10, Dkt. 12-3).

On May 17, 2010, the Band requested that the National Indian Gaming Commission (NIGC) mediate the parties' dispute regarding the rental rate for the Extension Term in light of the widely divergent views of the Band and the City with respect to the rental rate that should apply. (Dkt. 78-1). On May 21, 2010, the City joined in the Band's request for NIGC mediation as to the narrow issue of the rental rate for the Extension Term.

Thereafter, on June 28, 2010, the NIGC advised the parties that it would mediate through John R. Hay, Senior Attorney for the NIGC. (Dkt. 90-1). An initial conference call was held on July 12, 2010, and the parties submitted opening statements. On August 13, 2010, NIGC Chairwoman Tracie L. Stevens notified the parties that the NIGC declined to mediate their dispute after reviewing the parties' positions:

> Based on a review of the opening statements provided by both parties, it does not appear that mediation is likely to be productive. Rather binding arbitration appears to be the most appropriate and efficient mechanism given that the only issue to be decided under the Sublease is the appropriate percentage of gross revenue to be paid by the Tribe to the City from April 1, 2011, to March 31, 2036.

(Dkt. 100-1).

Thereafter, on August 16, 2010, the Band formally requested "that the NIGC perform a full review of the 1994 Agreements for IGRA compliance in its capacity as regulator, rather than as a neutral mediator."  On October 20, 2010, the Chairwoman of the NIGC informed the parties that she had "directed the Enforcement Division and the Office of General Counsel to review this matter" based on the Band's August 16 letter.  The parties were directed to submit briefing on the matter by no later than November 19, 2010.  The NIGC has not yet issued an opinion or taken any action in connection with this review.

On August 27, 2010, the City demanded arbitration under Section 4.2.2.5 of the Sublease, because, in its view, the matter was subject to arbitration in light of the NIGC's letter declining to mediate the parties' dispute regarding the rental rate that is to apply for the Extension Term.  On September 16, 2010, the Band informed the City that it did not believe that the matter was presently subject to arbitration:  "[W] are still awaiting the NIGC's response to the Band's request for full review of the 1994 Agreements, which we expect soon.  Should the NIGC accept review, the Band takes the position not only that the Court should continue the litigation, but that arbitration must be continued until such time as the NIGC rules that the 1994 Agreements are legal under the Indian Gaming Regulatory Act."  The Band also stated that it did not believe a timely demand for arbitration could be made prior to the October 1, 2010, date set forth in the 1994 Agreements.  Shortly thereafter, the City informed the Band that the City was selecting Steven C. Overom, Esq., as its party arbitrator.  Mr. Overom is a partner in the Maki & Overom law firm, which represents the City in this matter.

Given the Band's objections regarding the October 1 date, the City made a second demand for arbitration on October 2, 2010, and shortly thereafter, the City again notified the Band that it was appointing Mr. Overom as its party arbitrator.  On October 22, 2010, the Band

informed the City that it had already selected its party arbitrator.  However, the Band stated that because the Chairwoman of the NIGC had recently referred the 1994 Agreements to the Enforcement Division for review, the Band was taking the position that arbitration was premature.  As such, the Band declined to begin the arbitration process and further declined to disclose the identity of its chosen party arbitrator at that time.

On January 14, 2011, the City renewed its demand for arbitration, and this Motion followed based on the Band's continued objection to proceeding with arbitration at this time.

## II.    STANDARD OF REVIEW

The City moves the Court to compel arbitration under the FAA, see 9 U.S.C. § 4.  "The Supreme Court has repeatedly noted that the Federal Arbitration Act was designed to combat longstanding hostility to arbitration by establishing 'a liberal federal policy favoring arbitration agreements.'"  Bob Schultz Motors, Inc. v. Kawasaki Motors, Corp., USA, 334 F.3d 721, 725 (8th Cir. 2003), cert. denied, 540 U.S. 1149 (2004), quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also, Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004).  With the enactment of the FAA, "Congress intended to make arbitration agreements as enforceable as other contracts, but no more so."  Creson v. Quickprint of America, Inc., 558 F. Supp. 984, 986 (W.D.Mo. 1983), citing Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 404 n. 12 (1967).  Under the FAA, "written agreements to resolve disputes through arbitration are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 679 (8th Cir. 2001), quoting Title 9 U.S.C. §2.

The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition any federal district court with jurisdiction over the underlying dispute for an order compelling arbitration.  9 U.S.C. § 4.  See also, Pro Tech Industries, Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004).  "By its terms, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts **shall** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Id. , quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  A district court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the existing dispute falls under the coverage of the agreement.  Gannon, 262 F.3d at 680.  The Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter."  Keymer v. Management Recruiters International, Inc.,169 F.3d 501, 504 (8th Cir. 1999).  However, "the parties' intentions * * * are generously construed as to issues of arbitrability."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

## III.   DISCUSSION

### A.      Whether the Arbitration Issue is Properly Before the Court

As a threshold matter, the Court must address whether the City's request for an order compelling arbitration is properly before the Court.[2]  The Court is satisfied that the Motion may be properly addressed and decided by the Court at this time.

---

[2] During the hearing on the City's Motion, the Court *sua sponte* raised the issue of whether the Motion was properly before the Court, given that the City had not specifically requested an order compelling arbitration as relief in its Complaint.  The Court asked the parties to file simultaneous

Section 4 of the FAA states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration **may petition any United States district court** which, save for such agreement, would have jurisdiction [over the parties' dispute] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.  Five days' notice in writing of such application shall be served upon the party in default.  Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure.  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

9 U.S.C. § 4 [emphasis supplied].  Section 6 of the FAA states that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions."  9 U.S.C. § 6.   The provisions of the FAA "call for an expeditious and summary hearing, with only restricted inquiry into factual issues."  <u>Moses H. Cone Memorial Hospital</u>, 460 U.S. at 22.

The City filed this action in September 2009 alleging that the Band was in breach of and had anticipatorily repudiated the 1994 Agreements.  (<u>See</u>, Complaint, Dkt. 1).  The City requested the following relief: a declaratory judgment that the 1994 Agreements, which contain the arbitration agreement, are valid and enforceable; a declaration that the Band is in breach of the 1994 Agreements; an award of damages based upon the Band's current breach; an injunction requiring the Band to comply with the terms and conditions of the 1994 Agreements (i.e., specific performance); and, as an alternative to specific performance given the Band's complete

---

letter briefs on the issue by April 15, 2011, so that the Court could adequately address whether the matter could be properly decided by the Court at this time.  (<u>See</u>, Dkts. 175-176).

repudiation of the 1994 Agreements, accelerated damages for the remainder of the contractual relationship extending to March 31, 2036 (i.e., for the Extension Term). (Id. at pp. 11-12 ¶s 1-5).

On April 21, 2010, the Honorable Ann D. Montgomery partially granted the City's Motion for Summary Judgment and held that the 1994 Agreements are valid and enforceable pursuant to the Consent Decree that was entered in 1994.  (Dkt. 73).  However, the District Court found that summary judgment was not warranted as to future damages at that time:

> "In the alternative to specific performance of the 1994 Agreements, the City's Complaint seeks accelerated damages for nonpayment of the quarterly payments for the 25 year extension term, which begins April 1, 2011.  The Band argues that fact issues persist on the amount of the future payments claimed as damages by the City.  The City seems to agree that summary judgment is not warranted as to the amount of future damages: in its reply brief, the City clarifies that summary judgment as to liability for the future payments is appropriate but that, per the 1994 Agreements, determining the amount of those payments will require further proceedings, specifically, binding arbitration."

(Id. at p. 19).  As such, the Court held "that summary judgment is not appropriate as to the amount of future damages for the quarterly payments that will be owed to the City for the 25 year term beginning on April 1, 2011."   (Id.)  Although the Court did not grant summary judgment as to the future damages, it is clear that the Court concluded that the Band was liable to make payments during the Extension Term, once the rental rate was fixed, pursuant to the Court's Order and the Consent Decree.

First, the Court concludes that the arbitration clause is clearly a part of the dispute raised in this lawsuit and has been since it was commenced in 2009.  While the City's Complaint does not specifically request an order compelling arbitration, the City commenced this action alleging that the Band was currently in breach of the 1994 Agreements and that it had anticipatorily repudiated the remainder of the Agreements.  As relief, the City sought accelerated damages for

the Extension Term and specific performance of all the terms of the 1994 Agreements, which the contemplates specific performance of the arbitration agreement contained within the 1994 Agreements.

In addition, the District Court's Order on the City's Motion for Summary Judgment clearly reflects and contemplates that the Extension Term and the arbitration clause are a part of this lawsuit.  The District Court denied the City's request for Summary Judgment as to accelerated damages only because the amount of future damages could not be determined until the parties submitted the matter to binding arbitration as contemplated in the 1994 Agreements. Until arbitration is concluded and the rental rate is fixed, the Court cannot reach the issue of accelerated damages under the Extension Term, since the essential terms for calculating the Band's payments are not yet fixed.  Consequently, the Band was on notice from the beginning that the terms that would govern the Extension Term, and the related arbitration, were at issue in this lawsuit.  Therefore, the Court finds that an order compelling arbitration is encompassed within the relief sought by the City in its Complaint.

More importantly, the Court finds that the FAA does not require that the issue be raised and asserted in a pleading or through the formal service of a summons and complaint.  The FAA provides that an aggrieved party may petition a district court with jurisdiction over the underlying dispute, and that such an application to the district court should be made and heard by the court "in the manner provided by law for the making and hearing of motions."  As such, the FAA clearly contemplates that an aggrieved party may raise the issue through a motion filed with an appropriate district court with jurisdiction over the dispute.  Certainly, there is no

question that this Court has jurisdiction over the parties' dispute.[3]   Therefore, the issue is properly raised, and the Court will proceed to the merits of the City's Motion.

### B.      Merits of the City's Motion to Compel Arbitration[4]

As previously noted, in addressing motions to compel arbitration under the FAA, the district court is generally constrained to addressing two narrow issues: whether a valid agreement to arbitrate exists and, if it does, whether the agreement encompasses the dispute.  See, Gannon, 262 F.3d at 680.  In the present case, Judge Montgomery's summary judgment Order makes clear that the validity and enforceability of the 1994 Agreements is no longer at issue in the present litigation.  (Dkt. 73; see also, Dkts. 92, 105, 148, and 156).  Consequently, it is the law of this case that the 1994 Agreements are valid and enforceable.  Moreover, the present dispute regarding the rental rate for the Extension Term clearly falls within the arbitration clause, given that the 1994 Agreements unequivocally require that the parties resolve the distinct and finite issue of the rental rate to apply for the Extension Term through binding arbitration (if an agreement could not otherwise be reached through negotiation and mediation).  Consequently,

---

[3]      For these same reasons, the Court also rejects the Band's argument that the Court would be rendering an advisory opinion in deciding the City's Motion.  Because the FAA only requires that the issue be raised by petitioning a court with jurisdiction – which the City has done here – the Court also finds that there is a live case or controversy that can be resolved pursuant to Section 4 of the FAA.

[4]      In its Motion to Compel, the City asked the Court to select an arbitrator for the Band because it had failed to select an arbitrator according to the terms of the arbitration clause.  In its Memorandum, the Band disclosed that it had selected Brian O'Neill of the Faegre & Bensen law firm as its arbitrator.  Furthermore, the City also requested that the Court overrule the Band's objection to the City's selection of Steve Overom as its party arbitrator.  On the record at the Motion hearing, the City withdrew its selection of Mr. Overom and instead selected Thomas R. Thibodeau  of the Thibodeau, Johnson & Feriancek law firm as its arbitrator.  Therefore, the Motion is now moot as to these two issues, and the Court need not reach them.

the Court finds that there is undeniably a valid and enforceable agreement to arbitrate that covers the dispute regarding the rental rate to be applied for the Extension Term.

The Band has not expressly disputed that the 1994 Agreements require binding arbitration to determine the rental rate for the Extension Term.  Rather, the Band argues that the City is not a "party aggrieved" within the meaning of the statute because the Band has not unequivocally refused to arbitrate.  Consequently, the Band contends that the City cannot avail itself of the remedies available under the FAA.

Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another under a written agreement for arbitration" to petition the Court for an order compelling arbitration.  The Band claims that its insistence that the arbitration be held in abeyance while the NIGC conducts a review of the 1994 Agreements does not constitute "failure, neglect, or refusal" to arbitrate.  However, the Court finds that the Band's argument fails to recognize the plain import of the statutory language and of the arbitration clause.  As the Court understands the above language, a party is aggrieved when another party to the arbitration agreement has **failed, neglected or refused** (for whatever reason) to arbitrate according to the terms of the arbitration agreement.  As such, a determination of whether the Band has failed, neglected or refused to arbitrate can only be made by interpreting and applying the arbitration agreement.

The primary goal of contract interpretation is to determine and enforce the intent of the parties.  Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979).  "[T]he language [of a contract] must be given its plain and ordinary meaning and will be enforced by the courts even if the results are harsh."  Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky, 674 N.W.2d

176, 179 (Minn. 2004).  The meaning of the terms of the contract must be determined within the context of the document as a whole and not in isolation.  Republic National Life Ins. Co v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979).  Moreover, courts should avoid a construction that would render one or more provisions meaningless.  Current Technology Concepts, Inc. v. Irie Enterprises, Inc., 530 N.W.2d 539, 543 (Minn. 1995).

The 1994 Agreements required that the Band and the City negotiate in good faith regarding the rental rate for the Extension Term on or before January 1, 2010.  If they had not reached an agreement by June 30, 2010, the parties could request mediation through the NIGC, and if they failed to reach an agreement by October 1, 2010, the parties "**shall submit** the dispute to binding arbitration under the arbitration clause of Paragraph 10 of the Tribal-City Accord." [emphasis supplied].  In turn, the arbitration clause states that after a written demand for arbitration is made, both parties have 20 days each to choose their arbitrators, who would then have 20 days to choose a third arbitrator.  A hearing is required within 60 days of the selection of the third arbitrator.  Lastly, and most importantly, the Extension Term was to commence on **April 1, 2011**.

The Court finds that the plain language of the arbitration clause contemplates that the rental rate would be fixed through binding and mandatory arbitration prior to the effective date of April 1, 2011, which has now come and gone.  Any other reading of the contract would render meaningless the timing provisions of the agreement and would frustrate the clear and deliberate purpose of the structure and timing of the parties' negotiations and subsequent arbitration, as set forth in detail in the 1994 Agreements.  The 1994 Agreements provide that the parties would pursue negotiation in good faith starting in January 2010, and if the negotiations and any subsequent mediation failed, the matter would be submitted to binding arbitration in October

2010 upon written demand.  This  would permit sufficient time to fix the rental rate prior the date on which it would become effective.  While the Band has not stated that it "refuses" to arbitrate, the Court finds that the Band has nevertheless failed to arbitrate in accordance with the plain meaning of the arbitration clause, which contemplates that the parties will proceed with arbitration **upon written demand if no agreement is reached by October 1, 2011**.  These conditions have clearly been met, and as such, the Court finds that the Band has **unequivocally** failed or neglected to proceed with arbitration according to the terms that were agreed upon by the parties.  Therefore, the Court finds that the City is an aggrieved party within the meaning of the FAA.

The Band has also argued that it would be premature to arbitrate the rental rate for the Extension Term until such time as the NIGC has concluded its review of the legality of the 1994 Agreements, because the agency's decision may materially impact the arbitration.  Even assuming this to be true, the FAA significantly limits the district court's discretion in the submission of matters to arbitration where there is a valid and enforceable arbitration agreement. The Eighth Circuit has advised that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts **shall** direct the parties to proceed to arbitration on issues as to which an arbitration has been signed."   Pro Tech Industries, Inc., 377 F.3d at 871 [emphasis in original].  Once the Court concludes "that the parties have reached such an agreement [to arbitrate], the FAA compels judicial enforcement of the arbitration agreement." Gannon, 262 F.3d at 680 ("Our role in determining whether a court should compel arbitration is limited").

The Band may be desirous of the NIGC's guidance, but that guidance is not contemplated or required by the arbitration agreement, which governs the parties' obligations and dictates the

procedure that must be followed in resolving the rental rate for the Extension Term.  Simply put, the validity of the 1994 Agreements is not at issue, and there is nothing in the plain language of the FAA or the 1994 Agreements that would permit the Court to consider the desirability of first obtaining the NIGC's guidance before compelling arbitration according to the terms set forth in the parties' arbitration agreement.  Rather, the Court's discretion is limited to determining whether a valid arbitration agreement has been signed covering the dispute.  As the Court explained above, there is clearly a valid and enforceable agreement to arbitrate the rental rate for the Extension Term, and the Band has unequivocally failed to arbitrate according to the terms of that agreement.  Accordingly, the Court finds that it must compel arbitration, and it is therefore recommended that the City's Motion to Compel Arbitration be granted.

## III.     RECOMMENDATION

Based on the foregoing and all of the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.      The City's Motion to Compel Arbitration [Docket No. 165] be GRANTED;

2.      The twenty-day time period for selecting a third arbitrator shall commence on the date of this Report and Recommendation if no objections are filed; in the event that objections are filed, the twenty-day time period shall commence upon the filing of the Court's Order adopting this Report and Recommendation.

DATED:  April 28, 2011                                    s/Leo I. Brisbois_____
                                                         LEO I. BRISBOIS
                                                         United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by May 12, 2011** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.