# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| City of Duluth,<br><br>       Plaintiff,<br><br>v.<br><br>Fond du Lac Band of Lake Superior Chippewa,<br><br>       Defendant. | Case No. 09-cv-2668 (SRN/LIB)<br><br>**MEMORANDUM OPINION AND ORDER** |

David P. Sullivan, 717 Sunset Cove, Madeira Beach, FL 33708; Gunnar B. Johnson and M. Alison Lutterman, City of Duluth, 410 City Hall, 411 West First Street, Duluth, MN 55802; Robert C. Maki and Shawn B. Reed, Maki & Overom Limited, 31 West Superior Street, Suite 402, Duluth, MN 55802, for Plaintiff.

Donald J. Simon and Anne D. Noto, Sonosky, Chambers, Sachse, Endreson & Perry, LLP, 1425 K Street, N.W., Suite 600, Washington, DC 20005; Henry M. Buffalo, Jr., Buffalo Law Office, 3112 Frontier Drive, Woodbury, MN 55129; and Dennis Peterson, Fond du Lac Band of Lake Superior Chippewa Legal Affairs Office, 1720 Big Lake Road, Cloquet, MN 55720, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on remand from the United States Court of Appeals for the Eighth Circuit regarding this Court's denial of Defendant's request for retrospective relief under Rule 60(b)(6) [Doc. No. 260]. Upon reconsideration as mandated by the Eighth Circuit, the Court grants Defendant's request as discussed below.

1

## II. BACKGROUND

The factual and procedural background of this case has been discussed extensively in several prior orders issued by this Court and by the Eighth Circuit.[1] Relevant to the present matter, Plaintiff City of Duluth ("City") and Defendant Fond du Lac Band of Lake Superior Chippewa ("Band") entered into a joint venture in 1986 to create and operate a casino in downtown Duluth, Minnesota. In 1988, Congress passed the Indian Gaming Regulatory Act ("IGRA"), which requires that Indian tribes have the "sole proprietary interest" in and exclusive control of any Indian gaming activity authorized by the Act. 25 U.S.C. § 2710(b)(2)(A). The following year, the Band filed suit in this District, seeking a declaration that the 1986 Agreement with the City violated the IGRA. The Court dismissed the Band's action without prejudice and directed the Band to seek review by the agency responsible for interpreting and enforcing the IGRA, the National Indian Gaming Commission ("NIGC"). The NIGC concluded that the casino's operation violated the IGRA's "sole proprietary interest" rule, and the NIGC Chairman advised the parties that it would initiate enforcement proceedings unless the parties could negotiate a new contract on their own.

---

[1] See City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 785 F.3d 1207 (8th Cir. 2015) ("City of Duluth VI"); City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 702 F.3d 1147 (8th Cir. 2013) ("City of Duluth IV"); City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 977 F. Supp. 2d 944 (D. Minn. 2013) ("City of Duluth V"); City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 830 F. Supp. 2d 712 (D. Minn. 2011) ("City of Duluth III"); City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 708 F. Supp. 2d 890 (D. Minn. 2010) ("City of Duluth I"); City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, No. 09-2668 (ADM/RLE), 2010 WL 3861371 (D. Minn. July 12, 2010) ("City of Duluth II").

The parties thereafter engaged in settlement negotiations that, in June 1994, resulted in seven new agreements ("1994 Agreements"). Although the 1994 Agreements reorganized the parties' relationship to eliminate the joint venture, the City retained rights regarding various aspects of operating the casino. In addition, the Band was required to pay the City nineteen percent of the casino's gross revenues as "rent" during the "Initial Term" (from 1994 through March 31, 2011). The rental rate for the "Extension Term" (from April 1, 2011 to March 31, 2036) was to be negotiated at a later date.

As required, the parties submitted the 1994 Agreements to the NIGC for approval. The NIGC found that the Agreements were consistent with the IGRA and recommended to the Court that they be approved. On June 22, 1994, the Court issued an order incorporating the detailed stipulation of the parties into a consent decree ("Consent Decree"). Consistent with the terms of this Consent Decree, the Band paid the City approximately $75 million in rent from 1994 until 2009, at which point the Band ceased making payments on the ground that it had been paying more than nineteen percent of the casino's gross revenues because certain expenses should have been offset.

In September 2009, after the Band did not respond to the City's request to cure its breach, the City brought this action to enforce the Consent Decree. The Band filed a counterclaim alleging that the Decree was inconsistent with the IGRA and should be dissolved. The City moved for summary judgment and, in April 2010, this Court ruled that the Band's argument regarding the legality of the Consent Decree was barred by res judicata because the Decree had been approved by the Court and formalized in a judgment. The Court decided to schedule a trial on the question of whether the Band had

overpaid the City between 1994 and 2011, but noted that the Consent Decree indicated that the payment plan for the 2011–2036 period would be decided by arbitration. After another round of arguments by the parties, the Court ordered them to submit the issues related to the 2011–2036 period to arbitration. Meanwhile, the Band sought review of the 1994 Agreements by the NIGC and, on July 12, 2011, the NIGC issued a notice of violation ("NOV"). The NOV determined that the provisions in the Consent Decree violated the IGRA's "sole proprietary interest" rule, and it ordered the Band to cease performance or face sanctions.

On July 22, 2011, the Band moved this Court for dissolution of the Consent Decree pursuant to Federal Rule of Civil Procedure 60(b). In a Memorandum Opinion and Order dated November 21, 2011, the Court relieved the Band "of any further compliance with its obligations under the 1994 Agreements." City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 830 F. Supp. 2d 712, 728 (D. Minn. 2011) ("City of Duluth III"). Regarding "retroactive relief," the Court held that the Band could not recover its previously-paid rent and that the Band must pay the withheld rent from 2009 to 2011. Id. Finally, the Court stated that a trial would be scheduled later on the issue of "contra-revenues"—i.e., whether the Band could recover any overpayments to the City by recognizing certain expenses as offsets against revenue. Id. at 715, 727–28.

Both parties appealed the November 2011 Order. The City appealed the prospective dissolution of the Consent Decree relating to the 2011–2036 term, and the Band appealed the portion of the ruling compelling it to pay rent that it had withheld from 2009 to 2011. However, the Band did not appeal the ruling that it could not recover the

4

rent already paid from 1994 to 2009. On January 14, 2013, the Eighth Circuit (1) affirmed this Court's ruling under Rule 60(b)(5) relieving the Band of prospective compliance with the Consent Decree, and (2) reversed the denial of the Band's request for retrospective relief under Rule 60(b)(6) and remanded that question for further proceedings. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 702 F.3d 1147, 1156 (8th Cir. 2013) ("City of Duluth IV"). The Eighth Circuit directed this Court to examine all relevant factors as to whether retrospective relief for the 2009–2011 period is available to the Band under Rule 60(b)(6). Id. at 1155.

In its October 8, 2013 Memorandum Opinion and Order on remand, this Court evaluated and weighed eight factors:

> To be sure, certain factors support the Band's request, namely: (1) the diligence with which the Band sought relief under Rule 60(b)(6) after receiving the NIGC's July 12, 2011, NOV; (2) the close relationship between the 1994 consent decree and the July 12, 2011, NOV; and (3) the fact that by the time the Band began withholding rent in 2009, the City was on notice that the NIGC's views on the validity of the 1994 Agreements might have changed. Other factors, however, prevent the Band's circumstances from rising to the truly extraordinary level required for Rule 60(b)(6) relief, including: (1) the fact that the change in law presented by the July 12, 2011, NOV, alone, is insufficient to grant retrospective relief; (2) the 1994 consent order is a past, executed judgment on which the City has relied; (3) the parties voluntarily and deliberately entered into the terms of the 1994 Agreements; (4) the NIGC recommended in 1994 that Judge Magnuson approve the settlement agreement; and (5) the Band has a defense to complying with a valid court order, should it face any sanctions by the NIGC.

City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 977 F. Supp. 2d 944, 956 (D. Minn. 2013) ("City of Duluth V"). Based on this analysis, the Court concluded

5

that "the circumstances altogether do not rise to the level of the truly extraordinary to warrant retrospective relief under Rule 60(b)(6)." Id.

The Band appealed and, on May 8, 2015, the Eighth Circuit reversed the Court's October 2013 ruling and again remanded the case for further consideration. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 785 F.3d 1207, 1212 (8th Cir. 2015) ("City of Duluth VI"). The court of appeals summarized its earlier opinion as setting forth six factors for this Court to consider in determining whether the Band is entitled to retrospective relief under Rule 60(b)(6):

> (1) the parties' voluntary agreement to the 1994 decree; (2) the Gaming Commission's initial endorsement of the 1994 agreement; (3) the Gaming Commission's lack of authority to punish a party for obeying a court order; (4) the congressional policy behind IGRA and the creation of the Gaming Commission, including Congress's express intent that tribes be the primary beneficiaries of Indian casinos; (5) that the City was on notice in 2009 of relevant changes in the Gaming Commission's views; and (6) that the July 12, 2011 NOV could be an "exceptional" occurrence justifying relief.

Id. at 1210. The Eighth Circuit concluded that this Court failed to consider the fourth factor and ordered that, on remand:

> the district court must give proper weight to the congressional intent that tribes be the primary beneficiaries of Indian gaming as well as other relevant factors we have previously identified. These include the facts that the City was on notice in 2009 of relevant actions and policies of the Gaming Commission and its warning in the 2011 Notice of Violation that the tribe would violate IGRA by making further rent payments to the city. As discussed in our prior City of Duluth opinion, such change in the governing law is also relevant to the question of whether an exceptional circumstance compels a grant of Rule 60(b)(6) relief.

Id. at 1212. This Court subsequently ordered, and received, supplemental briefing from the parties addressing the issues raised by the Eighth Circuit [Doc. Nos. 293, 295].

6

## III. DISCUSSION

As this Court has previously discussed, Federal Rule of Civil Procedure 60(b)(6) relief is "exceedingly rare" because it requires an intrusion into the sanctity of a final judgment, and therefore, it is available only in "extraordinary circumstances." In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 496 F.3d 863, 868 (8th Cir. 2007). A consent decree is subject to Rule 60(b) the same as any other judgment or decree. Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 378 (1992). Thus, it "can be altered 'if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed.'" City of Duluth IV, 702 F.3d at 1152 (quoting Rufo, 502 U.S. at 380). The party seeking relief bears the burden of establishing "'a significant change in circumstances,'" but a consent decree "'must'" be modified "if 'one or more of the obligations placed upon the parties has become impermissible under federal law.'" Id. (quoting Rufo, 502 U.S. at 383, 388).

Of the factors identified by the Eighth Circuit as relevant to determining whether exceptional circumstances warrant retrospective relief for the Band under Rule 60(b)(6), this Court found that three disfavor relief (i.e., the parties' voluntary agreement to the consent decree, the NIGC's initial endorsement of the 1994 Agreements, and the NIGC's lack of authority to punish a party for obeying a court order), and that one favors relief (i.e., that the City was on notice in 2009 of relevant changes in the NIGC's views). Duluth V, 977 F. Supp. 2d at 956. This Court also found that the change in law caused by the NOV—standing alone—was insufficient to grant retrospective relief. Id. On balance, this Court determined that these factors did not weigh in favor of granting the

7

extraordinary relief sought by the Band. Pursuant to the Eighth Circuit's ruling, however, the Court will reconsider its analysis in light of the "congressional policy" factor.

Generally speaking, "[f]ederal policy and interests are particularly important in consent decrees" which, when entered in federal court, "'must be directed to protecting federal interests . . . [and] further[ing] the objectives of [federal] law.'" Duluth VI, 785 F.3d at 1211 (quoting Frew v. Hawkins, 540 U.S. 431, 437 (2004)). Relevant here, the Eighth Circuit held that "the congressional policy behind IGRA and the creation of the Gaming Commission, including Congress's express intent that tribes be the primary beneficiaries of Indian casinos" is a "fundamental factor" that "deserv[es] significant weight in this case." Id. at 1210–11. As explained by the Eighth Circuit, that congressional policy is expressed in the IGRA itself:

> IGRA explicitly defined the policies and goals which led to its enactment. Congress indicated that its intent upon passing IGRA was "to provide a statutory basis for the regulation of gaming by an Indian tribe adequate . . . to ensure that the Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C. § 2702(2). The Gaming Commission was created "to protect such gaming as a means of generating tribal revenue." 25 U.S.C. § 2702(3). The "primary beneficiary" rule arose from Congress's aim "to promote tribal economic development, tribal self-sufficiency, and strong tribal government" which is "a principal goal of Federal Indian policy." 25 U.S.C. §§ 2701(4), 2702(1). Congress has noted that for tribes, gaming income "often means the difference between an adequate governmental program and a skeletal program that is totally dependent on Federal funding." S.Rep. No. 100–446, at 3 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3072.

Id. at 1211.

In its brief on this matter, the Band argues that this congressional policy "overwhelmingly" favors granting the requested relief. (Def.'s Mem. on Remand in

8

Supp. of Mot. to Modify Consent Decree [Doc. No. 293] at 1.) More specifically, the Band contends that payment of the additional $10.4 million that would be required under the Consent Decree "would undermine the key goal of IGRA by siphoning millions of more dollars of Indian gaming revenues away from an Indian tribe and to a non-Indian party." (Id. at 4.) In addition, the Band argues that its obligations under the Consent Decree are no longer permissible under federal law—as evidenced by the NIGC's conclusion that the required payments violate the IGRA—and so the Consent Decree must be modified. (Id. at 6.)

The City, on the other hand, argues that the NIGC did not find that the 1994 Agreements violated the IGRA's "primary beneficiary" rule and that the Band is in fact the primary beneficiary of its gaming activities because it "has received the greater share [of] the gambling revenue." (Pl.'s Mem. on Remand in Opp. to Def.'s Mot. for Rule 60(b)(6) Relief [Doc. No. 295] at 1–2.) The City asserts that the IGRA expressly contemplates the use of gaming revenues to help fund local government agencies and that revenue-sharing is not limited to reimbursements for fees. (Id. at 2.)

The Court agrees with the Band that the congressional policy factor strongly favors granting the requested relief. First, contrary to the City's argument, "the [NIGC] has determined that rent payments to the City violated the IGRA requirements that a tribe be the sole proprietor of a casino <u>and also</u> the primary beneficiary of gaming." City of Duluth VI, 785 F.3d at 1211 (emphasis added). Second, even if the Band could be considered the primary beneficiary because it has received a greater share of the gaming revenues, directing millions of dollars away from the Band is directly contrary to the

9

IGRA's goals of promoting tribal economic development, tribal self-sufficiency, and strong tribal government. Finally, although the IGRA contemplates that gaming revenues may also help fund local government agencies, the record suggests that the amount received by the City is "grossly disproportionate to the cost of any city services for the casino" and to property taxes. Id.

Given the significant weight that is to be placed on this factor, the Court finds that it tips the balance in favor of granting the Band retrospective relief under Rule 60(b)(6). Although (1) the parties voluntarily agreed to the Consent Decree, (2) the NIGC initially endorsed the Agreements, and (3) the NIGC may lack authority to punish the Band for its compliance with the Consent Decree, those factors are outweighed by (4) the strong congressional intent that tribes be the primary beneficiaries of gaming revenues, (5) the fact that the Band's obligation to pay rent under the Agreements is now considered—by the agency tasked with making such determinations—to violate that intent, and (6) the fact that the City was aware of the NIGC's changing viewpoint on the subject matter. Accordingly, the Band is relieved from its obligation to pay to the City the rent withheld in 2009, 2010, and 2011.

**IV. ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion for retrospective relief under Rule 60(b)(6) is **GRANTED** with respect to the payments withheld from 2009 to 2011. This

10

Order finally resolves all remaining issues between the parties in this matter.  Therefore,

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 28, 2015                    s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge